USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/21/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

SHREAL DOUGLAS, individually and  :
on behalf of all other persons
similarly situated, et al.,        :

                                    :      15 Civ. 5126 (HBP)

              Plaintiffs,  :      OPINION
                                            AND ORDER
  -against-                        :

SPARTAN DEMOLITION COMPANY LLC,    :
et al.,
                                      :

              Defendants.  :

----------------------------------X

PITMAN, United States Magistrate Judge:

I. Introduction

        This matter is before me on plaintiffs' application for a default judgment and damages against defendants A.J.S. Management, Inc. ("AJS") and AJS Construction & Renovation Inc. ("C&R") (collectively, the "AJS Defendants"). Plaintiffs and the AJS Defendants have consented to my exercising plenary jurisdiction pursuant to 28 U.S.C. § 636(c).[1]

        On September 15, 2017, I granted defense counsel's motion to withdraw with the following admonition: "because AJS

_____

[1] Plaintiffs have also moved for a default judgment against remaining defendants, Spartan Demolition Company LLC ("Spartan") and Marc Alleyne ("Alleyne"). However, Spartan and Alleyne have never answered or appeared in this action. Because Spartan and Alleyne have not consented to my plenary jurisdiction pursuant to 28 U.S.C. § 636(c), plaintiffs' motion as to these defendants is addressed in a separate Report and Recommendation of even date.

and C&R are corporations and because corporations can appear in an action only through counsel, it is imperative that corporate defendants retain new counsel" (Endorsed Order, dated Sept. 15, 2017 (Docket Item ("D.I.") 61) ("Sept. 15 Order") (internal citations omitted)). I further warned that "[u]nless an attorney enters an appearance on behalf of AJS and C&R no later than October 15, 2017, it is my intention to enter a default judgment against AJS and C&R as to all claims against them" (Sept. 15 Order).

To date, the AJS Defendants have not obtained new counsel. Thus, pursuant to my Sept. 16 Order, I found the AJS Defendants to be in default and issued a scheduling order on January 2, 2018. My Scheduling Order provided, in pertinent part:

> 1. Plaintiffs shall submit proposed findings of fact and conclusions of law concerning the damages to be assessed against AJS and C&R no later than February 27, 2018. All factual assertions made by plaintiffs are to be supported by either affidavit or other material of evidentiary weight.
>
> 2. AJS and C&R shall submit their response to plaintiffs' submissions, if any, no later than March 27, 2018. IF AJS OR C&R (1) FAIL TO RESPOND TO PLAINTIFFS' SUBMISSIONS, OR (2) FAIL TO CONTACT MY CHAMBERS BY MARCH 27, 2018 AND REQUEST AN IN-COURT HEARING, IT IS MY INTENTION TO ISSUE A REPORT AND RECOMMENDATION CONCERNING DAMAGES ON THE BASIS OF PLAINTIFFS' WRITTEN SUBMISSIONS ALONE WITHOUT AN IN-COURT HEARING. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997); Fustok v. ContiCommodity Services Inc., 873 F.2d 38, 40 (2d Cir. 1989) ("[I]t is not necessary for the District Court to hold a hearing, as long as it ensured that there was a

basis for the damages specified in the default judgment.")

Plaintiffs timely submitted Proposed Findings of Fact and Conclusions of Law on February 27, 2018 (Plaintiffs' Findings of Fact and Conclusions of Law, dated Feb. 27, 2018 (D.I. 72) ("Pl. Memo.")). Copies of my Scheduling Order were mailed to the AJS Defendants. To date, the AJS Defendants have not submitted any materials with respect to this inquest, nor have they contacted my chambers in any way. Accordingly, on the basis of plaintiffs' submissions alone, I make the following findings of fact and conclusions of law.

II. <u>Findings of Fact</u>[2]

A. <u>The Parties</u>

1. Plaintiffs Shreal Douglas, Joe Smith, Michael Bautista, Eric Dupree and Shasheem Jones are former employees of the AJS Defendants (Amended Complaint, dated Apr. 24, 2017 (D.I. 48) ("Am. Compl.") ¶¶ 6, 29; Declaration of Shreal Douglas, dated May 27, 2015 (D.I. 68) ("Douglas Decl.") ¶ 1; Declaration of Joe

---

[2]As a result of defendants' default, all the allegations of the complaint, except as to the amount of damages, must be taken as true. <u>Bambu Sales, Inc. v. Ozak Trading Inc.</u>, 58 F.3d 849, 854 (2d Cir. 1995); <u>Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.</u>, 973 F.2d 155, 158-59 (2d Cir. 1992); <u>Trans World Airlines, Inc. v. Hughes</u>, 449 F.2d 51, 69-70 (2d Cir. 1971), <u>rev'd</u> <u>on</u> <u>other</u> <u>grounds</u> <u>sub</u> <u>nom.</u>, <u>Hughes Tool Co. v. Trans World Airlines, Inc.</u>, 409 U.S. 363 (1973).

Smith, dated May 27, 2015 (D.I. 71) ("Smith Decl.") ¶ 1; Declaration of Michael Bautista, dated May 27, 2015 (D.I. 67) ("Bautista Decl.") ¶ 1; Declaration of Eric Dupree, dated May 27, 2015 (D.I. 69) ("Dupree Decl.") ¶ 1; Declaration of Shasheem Jones, dated June 1, 2015 (D.I. ·70) ("Jones Decl.") ¶ 1).

2.   The AJS Defendants are domestic corporations organized under the laws of the State of New York with their principal place of business at 149 5th Avenue, New York, New York 10010 (Am. Compl. ¶ 9). Defendant Spartan is a domestic corporation organized under the laws of the State of New York with its principal place of business at 121-07 234th Street, Rosedale, New York 11422 (Am. Compl. ¶ 9). Defendant Alleyne is a resident of Queens and is an owner, officer, director and/or managing agent of Spartan (Am. Compl. ¶¶ 10-11). The AJS Defendants and Spartan had a gross revenue in excess of $500,000 (Am. Compl. ¶ 59).

3.   The AJS Defendants were hired by the City University of New York ("CUNY") to perform construction on the campus of Queens College (Am. Compl. ¶¶ 11, 39, 42, 73). Spartan is a subcontractor of the AJS Defendants; Spartan hired plaintiffs as interior mason tenders to perform the demolition work at the Queens College job site (Am. Compl. ¶¶ 11, 29, 39; Subcontract Agreement, annexed to Declaration of William C. Rand, Esq. as Ex. C, dated Feb. 27, 2018 (D.I. 66) ("Rand Decl.")).

4

B. Plaintiffs' Employment

4. Plaintiff Douglas worked on the Queens College project from approximately January 13, 2015 until approximately January 26, 2015 and again from approximately February 25, 2015 until approximately March 11, 2015 (Douglas Decl. ¶ 1). Throughout the entirety of his employment, Douglas worked between 40 and 52 hours per week (Douglas Decl. ¶ 8).

5. Prior to the start of his employment, Douglas was informed that he would be paid the prevailing wage rate of $56.84 per hour plus overtime premium pay for any hours worked in excess of 40 hours per week (Douglas Decl. ¶ 19). However, defendants paid Douglas only $15.00 per hour for all hours worked (Douglas Decl. ¶ 18).

6. Douglas' job duties did not include managerial or supervisory responsibilities and did not require the exercise of independent business judgment (Douglas Decl. ¶¶ 2-7).

7. Plaintiff Smith worked on the Queens College project from approximately February 6, 2015 until approximately March 11, 2015 (Smith Decl. ¶ 1). Throughout the entirety of his employment, Smith worked between 40 and 52 hours per week (Smith Decl. ¶ 8).

8. Prior to the start of his employment, Smith was informed that he would be paid the prevailing wage rate of $56.84

per hour plus overtime premium pay for any hours worked in excess of 40 hours per week (Smith Decl. ¶ 19). However, defendants never paid Smith for any of the hours he worked (Smith Decl. ¶¶ 18, 21).[3]

9. Smith's job duties did not include managerial or supervisory responsibilities and did not require the exercise of independent business judgment (Smith Decl. ¶¶ 2-7).

10. Plaintiff Bautista worked on the Queens College project from approximately January 13, 2015 until approximately January 26, 2015 and again from approximately February 25, 2015 until approximately March 11, 2015 (Bautista Decl. ¶ 1). Throughout the entirety of his employment, Bautista worked between 40 and 52 hours per week (Bautista Decl. ¶ 8).

11. Prior to the start of his employment, Bautista was informed that he would be paid the prevailing wage rate of $56.84 per hour plus overtime premium pay for any hours worked in excess of 40 hours per week (Bautista Decl. ¶ 18). However, defendants paid Bautista only $15.00 per hour for all hours worked (Bautista Decl. ¶¶ 17, 20).

---

[3]There is an inconsistency in the record concerning what, if anything, Smith was paid. Plaintiffs' damages chart lists Smith as having been paid $15.00 per hour (Plaintiffs' Damages Spreadsheet, annexed to Rand Decl. as Ex. F (D.I. 66-6) ("Pl. Damages Chart")). Given that counsel's damages chart has no evidentiary weight, I shall base my calculations on Smith's declaration in which he states under penalty of perjury that he was paid nothing.

12. Bautista's job duties did not include managerial or supervisory responsibilities and did not require the exercise of independent business judgment (Bautista Decl. ¶¶ 2-7).

13. Plaintiff Dupree worked on the Queens College project from approximately January 13, 2015 until approximately January 26, 2015 and again from approximately March 5, 2015 until approximately March 11, 2015 (Dupree Decl. ¶ 1). Throughout the entirety of his employment, Dupree worked between 40 and 52 hours per week (Dupree Decl. ¶ 8).

14. Prior to the start of his employment, Dupree was informed that he would be paid the prevailing wage rate of $56.84 per hour plus overtime premium pay for any hours worked in excess of 40 hours per week (Dupree Decl. ¶ 19). However, defendants paid Dupree only $15.00 per hour for all hours worked (Dupree Decl. ¶¶ 18, 21).

15. Dupree's job duties did not include managerial or supervisory responsibilities and did not require the exercise of independent business judgment (Dupree Decl. ¶¶ 2-7).

16. Plaintiff Jones worked on the Queens College project from approximately February 6, 2015 until approximately February 18, 2015 (Jones Decl. ¶ 1). Jones alleges that he worked at least 45 hours per week during this time period (Jones Decl. ¶ 8).

17. Although Jones' declaration does not specifically

7

allege that he was informed prior to his employment that he would be paid the prevailing wage rate of $56.84 per hour, it is alleged in the Amended Complaint that all plaintiffs were informed they would be paid $56.84 per hour plus overtime premium pay (Am. Compl. ¶ 44). Defendants paid Jones only $15.00 per hour for all hours worked (Jones Decl. ¶¶ 14-17).

18. Jones' job duties did not include managerial or supervisory responsibilities and did not require the exercise of independent business judgment (Jones Decl. ¶¶ 2-7).

19. Although plaintiffs were paid by Spartan, they were scheduled and supervised on a day-to-day basis by the AJS Defendants (Deposition of Hal Levy, annexed to Rand Decl. as Ex. D (D.I. 66-4) ("Levy Dep.") at 8-9, 73-75; Deposition of Steven DiPietro, annexed to Rand Decl. as Ex. E (D.I. 66-5) ("DiPietro Dep.") at 62).

## III. Conclusions of Law

20. Plaintiffs commenced this action under the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq., ("FLSA") and the New York Labor Law, §§ 650 et seq., ("NYLL") alleging that they did not receive their prevailing wages or overtime premium pay for demolition work that they performed at Queens College.[4] The

---

[4]Plaintiffs also alleged a minimum wage claim in their Amended Complaint (see Am. Compl. ¶¶ 1-2, 13, 21, 62). However,
(continued...)

8

Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because plaintiffs allege a violation of a federal statute -- the FLSA. The Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) with respect to plaintiffs' NYLL claims because they are part of the "same case or controversy" as their FLSA claims and arise out of the same facts. 28 U.S.C. § 1367(a).

21. The events giving rise to plaintiffs' claims occurred in the Eastern District of New York as Queens College is located at 65-30 Kissena Boulevard, Flushing, New York 11367 (Am. Compl. ¶ 39). However, defendants have not made any objection to the improper venue and, thus, this defense is waived. See Fed.R.Civ.P. 12(h).

A. Burden of Proof

22. Under the FLSA, an employee plaintiff generally "has the burden of proving that he performed work for which he was not properly compensated." Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946), superseded on other grounds by 29 U.S.C. §§ 251 et seq.; accord Santillan v. Henao, 822 F. Supp. 2d

---

[4](...continued)
plaintiffs' own declarations show that plaintiffs (with the exception of Smith) were paid $15.00 per hour -- more than the statutory minimum wage under the FLSA and the NYLL. See 29 U.S.C. § 206(a)(1) (FLSA minimum wage was $7.25 per hour in 2015); N.Y. Lab. Law § 652(1) (NYLL minimum wage was $8.75 per hour in 2015).

284, 293-94 (E.D.N.Y. 2011). However, "employees seldom keep . .
. records [of hours worked] themselves." Anderson v. Mt. Clemens
Pottery Co., supra, 328 U.S. at 687. Accordingly, the FLSA
requires that an employer "make, keep, and preserve . . . records
of the persons employed by him and of the wages, hours, and other
conditions and practices of employment." 29 U.S.C. § 211(c). In
default situations such as this one, if the defendant employer
does not maintain proper time or payroll records, he essentially
deprives "plaintiff of the necessary employee records required by
the FLSA, thus hampering plaintiff's ability to prove his dam-
ages." Santillan v. Henao, supra, 822 F. Supp. 2d at 294.
Accordingly, the Supreme Court has held that "an employee has
carried out his burden if he proves that he has in fact performed
work for which he was improperly compensated and if he produces
sufficient evidence to show the amount and extent of that work as
a matter of just and reasonable inference." Anderson v. Mt.
Clemens Pottery Co., supra, 328 U.S. at 687; accord Tran v.
Alphonse Hotel Corp., 281 F.3d 23, 31 (2d Cir. 2002), abrogated
on other grounds, Slayton v. American Exp. Co., 460 F.3d 215 (2d
Cir. 2006).

23. In light of the holding in Mt. Clemens Pottery
Co., courts in this Circuit have routinely found that where a
defendant employer defaults, a plaintiff may sustain his burden
of proof "'by relying on his recollection alone.'" Martinez v.

<u>Alimentos Saludables Corp.</u>, 16-cv-1997 (DLI)(CLP), 2017 WL
5033650 at *12 (E.D.N.Y. Sept. 22, 2017), <u>quoting</u> <u>Doo Nam Yang v.</u>
<u>ACBL Corp.</u>, 427 F. Supp. 2d 327, 335 (S.D.N.Y. 2005) (Sand,
D.J.); <u>see</u> <u>also</u> <u>Park v. Seoul Broad. Sys. Co.</u>, 05 Civ. 8956
(BSJ)(DFE), 2008 WL 619034 at *7 (S.D.N.Y. Mar. 6, 2008) (Jones,
D.J.) (holding that courts should apply a "special burden-shift-
ing standard" where employers fail to comply with this statutory
duty of record keeping).[5]

24. All plaintiffs have submitted declarations attest-
ing, with specificity, to the number of hours they worked at the
Queens College job site and the wages they were paid (<u>see</u> Douglas
Decl.; Smith Decl.; Bautista Decl.; Dupree Decl.; Jones Decl.).
Given defendants' default in this action and the deferential
legal standards set forth above, plaintiffs have sustained their
burden of proof.

---

[5]Plaintiff's burden of proof to establish damages is
virtually identical under the NYLL. <u>See</u> N.Y. Lab. Law § 195(4)
(requiring employers to maintain "payroll records showing the
hours worked, gross wages, deductions and net wages for each
employee"); <u>Marin v. JMP Restoration Corp.</u>, 09-cv-1384
(CBA)(VVP), 2012 WL 4369748 at *6 (E.D.N.Y. Aug. 24, 2012)
(Report & Recommendation), <u>adopted</u> <u>at</u>, 2012 WL 4364671 (E.D.N.Y.
Sept. 24, 2012) (to determine damages under the NYLL, courts
should use "the same burden-shifting scheme employed in FLSA
actions").

B. Prevailing Wage Claim

    25.  Plaintiffs seek damages under a prevailing wage
claim.  Plaintiffs allege that they are owed the prevailing wage
rate of $56.84 per hour as third party beneficiaries of the
public works subcontract agreement between Spartan and the AJS
Defendants (Rand Decl. ¶¶ 8-10).  In support of this claim,
plaintiffs submitted various documents from the subcontract
agreement, CUNY's pre-construction instructions and deposition
testimony from the AJS Defendants' supervisors who confirmed that
contractors working at the Queens College site were required to
pay prevailing wages and all workers were entitled to receive
$56.84 per hour for straight time (see Subcontract Agreement;
CUNY's Pre-Construction Directions to Contractors, annexed to
Rand Decl. as Ex. C (D.I. 66-3) at 3; Levy Dep. at 10; DiPietro
Dep. at 45).

    26.  New York Labor Law Section 220 "requires that any
laborers, workmen or mechanics hired to work on a public works
contract be paid a prevailing rate of wages."  Igene v. Miracle
Sec., Inc., 12-CV-149 (ERK), 2013 WL 5502868 at *1 (E.D.N.Y. Oct.
2, 2013) (internal quotation marks omitted).  Prevailing wage
claims may be brought "directly under Section 220 of the [New
York] Labor Law or as a common-law claim for breach of contract."
Dong v. Ng, 08 Civ. 917 (JGK)(MHD), 2011 WL 2150544 at *5

                              12

(S.D.N.Y. Mar. 8, 2011) (Dolinger, M.J.) (Report & Recommenda-tion), adopted at, 2011 WL 2150545 (S.D.N.Y. May 31, 2011) (Koeltl, D.J.); accord Almazo v. M.A. Angeliades, Inc., 11 Civ. 1717 (MGC), 2015 WL 6965116 at *2 (S.D.N.Y. Nov. 10, 2015) (Cedarbaum, D.J.) ("[A] public works project employee denied proper wages is not limited, however, to statutory remedies.  The employee may bring a common law breach of contract claim as the intended third-party beneficiary of a public works contract.").

27.  While the language in the Amended Complaint suggests that plaintiffs intended to recover their prevailing wages under a common law breach of contract theory, plaintiffs rely on New Labor Law Section 220 in their Proposed Findings of Fact and Conclusions of Law (Pl. Memo at 17).

28.  It is well established that exhaustion of administrative remedies is a condition precedent to a prevailing wage claim pursuant to New Labor Law Section 220.  See Almazo v. M.A. Angeliades, Inc., 11 Civ. 1717 (HBP), 2016 WL 5719748 at *1 (S.D.N.Y. Sept. 29, 2016) (Pitman, M.J.) (Section 220 requires employees of public works projects to exhaust administrative remedies before bringing a private action); Ethelberth v. Choice Sec. Co., 91 F. Supp. 3d 339, 358-59 (E.D.N.Y. 2015) ("[B]efore bringing a claim to recover wages at the prevailing rate pursuant to NYLL § 220, exhaustion of administrative remedies is re-quired."); Dong v. Ng, supra, 2011 WL 2150544 at *5 (collecting

cases).  Because plaintiffs have not submitted any evidence
showing that they have exhausted their administrative remedies,
they cannot recover prevailing wages under New Labor Law Section
220.  Ethelberth v. Choice Sec. Co., supra, 91 F. Supp. 3d at
358-59; Dong v. Ng, supra, 2011 WL 2150544 at *5.

      29.  However, there is no impediment to plaintiffs'
asserting their prevailing wage claim as a breach of contract
claim, for which there is no administrative exhaustion require-
ment.  Johnson v. Carlo Lizza & Sons Paving, Inc., 160 F. Supp.
3d 605, 613 (S.D.N.Y. 2016) (Engelmayer, D.J.) ("[P]rovided that
the public works contracts at issue expressly state that a
prevailing wage will be paid, plaintiffs' breach-of-contract
claim will not be dismissed on the ground of failure to exhaust
administrative remedies." (internal quotation marks and citations
omitted)); Hapanowicz v. Alexandria Tile Co., 11 Civ. 127 (ERK),
2014 WL 1311441 at *6 (E.D.N.Y. Mar. 31, 2014) ("The plaintiffs
were not required to resort to administrative remedies, however,
because the § 220 administrative process is not the exclusive
means for an employee denied prevailing wages to obtain re-
lief.").  Thus, because the contracts regulating the Queens
College demolition project clearly state plaintiffs were entitled
to the prevailing wage of $56.84 per hour and because plaintiffs
were third-party beneficiaries of those contracts, plaintiffs may
recover their prevailing contractual unpaid wages.  Dong v. Ng,

supra, 2011 WL 2150544 at *5 (awarding plaintiffs their prevailing wages under a common law breach of contract theory in an inquest).

### C. Overtime Claim

30. Plaintiffs also allege violations of the FLSA and the NYLL arising out of defendants' failure to pay them overtime premium pay for all hours worked in excess of 40 hours per week. Both the FLSA and the NYLL require employers to pay overtime wages, equal to one and one-half the employee's regular rate of pay, for every hour worked in excess of 40 hours in any given week. 29 U.S.C. § 207(a); N.Y. Lab. Law § 651; 12 N.Y.C.R.R. § 142-2.2. The method for calculating overtime under both statutes is the same, but a plaintiff may not receive double damages. Martinez v. Alimentos Saludables Corp., supra, 2017 WL 5033650 at *15. A plaintiff must plead sufficiently detailed information to "support a reasonable inference that [he] worked more than 40 hours a week." Kleitman v. MSCK Mayain Olam Habba Inc., 11-cv-2817 (SJ), 2013 WL 4495671 at *4 (E.D.N.Y. Aug. 20, 2013).

31. Because plaintiffs have sufficiently alleged that their contractual rate of pay was $56.84, plaintiffs are entitled to a premium pay of $85.26 for each hour worked in excess of 40 hours per week. See Dong v. Ng, supra, 2011 WL 2150544 at *6 ("the base wage from which the time-and-a half rate is to be

calculated is [plaintiffs'] contractual wage rate, rather than what defendants actually paid them"); Blue v. Finest Guard Servs., Inc., 09 CV 133 (ARR), 2010 WL 2927398 at *10-*11 (E.D.N.Y. June 24, 2010) (Report & Recommendation), adopted at, 2010 WL 2927403 (E.D.N.Y. July 19, 2010) (awarding overtime on contractual rate under the NYLL).

D. Liquidated Damages Claim

32. In addition to compensatory damages, plaintiffs also seek to recover liquidated damages.[6] However, because plaintiffs' recovery of unpaid prevailing wages is based on a common law breach contract claim and not the FLSA or the NYLL, plaintiffs are not entitled to recover liquidated damages on their claim for straight-time damages. See Dong v. Ng, supra, 2011 WL 2150544 at *5. Defendants' failure to pay plaintiffs overtime, on the other hand, triggers a violation under both the FLSA and the NYLL. 29 U.S.C. § 207(a); N.Y. Lab. Law § 651; 12 N.Y.C.R.R. § 142-2.2. Thus, plaintiffs are entitled to recover

---

[6]Oddly, plaintiffs seek liquidated damages in their motion papers, but do not include them in their overall damages calculations (Pl. Memo. at 19; Pl. Damages Chart).

16

100% of their overtime damages as liquidated damages.[7] 29 U.S.C. § 216(b); N.Y. Lab. Law § 198(1-a).

### E. Plaintiffs' Damages

#### 1. Shreal Douglas

33. Douglas worked an average of 46 hours per week[8] for approximately four weeks on the Queens College project (Douglas Decl. ¶ 1). Douglas alleges he was paid $2,760 during this time period ($15.00 x 46 hours x 4 weeks = $2,760). Thus, based on the principles described above, Douglas is entitled to **$10,426.88** in total damages, calculated as follows:

Straight-time Wages
4 weeks of work x 40 hours per week x $56.84 =      $9,094.40

Overtime Wages
4 weeks of work x 6 OT hours per week x $85.26 =      $2,046.24

Liquidated Damages
100% of $2,046.24 =                                  $2,046.24

      Total:                                   $13,186.88

      Plaintiff's wages actually paid:          ($2,760.00)

---

[7]While the FLSA and the NYLL allow plaintiffs to recover 100% of their unpaid overtime wages, plaintiffs may not receive double liquidated damages under both statutes. Rana v. Islam, 887 F.3d 118, 123 (2d Cir. 2018); Chowdhury v. Hamza Express Food Corp., 666 F. App'x 59, 60-61 (2d Cir. 2016) (summary order).

[8]Several plaintiffs, including Douglas, do not state the precise number of hours they worked each week. Rather, they state they worked between 40 and 52 hours per week. For such plaintiffs, I calculate damages based on the average of these figures, i.e., 46 hours per week.

Total Damages Owed:                    **$10,426.88**

2.  Joe Smith

34.  Smith worked an average of 46 hours per week for approximately four weeks on the Queens College project (Smith Decl. ¶ 1).  Smith alleges he was paid no wages during this time period (Smith Decl. ¶ 18).  Thus, based on the principles described above, Smith is entitled to **$13,186.88** in total damages, calculated as follows:

Straight-time Wages
4 weeks of work x 40 hours per week x $56.84 =      $9,094.40

Overtime Wages
4 weeks of work x 6 OT hours per week x $85.26 =    $2,046.24

Liquidated Damages
100% of $2,046.24 =                                $2,046.24

        Total Damages Owed:            **$13,186.88**

3.  Michael Bautista

35.  Bautista worked an average of 46 hours per week for approximately four weeks on the Queens College project (Bautista Decl. ¶ 1).  Bautista alleges he was paid $2,760 during this time period ($15.00 x 46 hours x 4 weeks = $2,760).  Thus, based on the principles described above, Bautista is entitled to **$10,426.88** in total damages, calculated as follows:

Straight-time Wages
4 weeks of work x 40 hours per week x $56.84 =      $9,094.40

18

<u>Overtime Wages</u>
4 weeks of work x 6 OT hours per week x $85.26 =     $2,046.24

<u>Liquidated Damages</u>
100% of $2,046.24 =                                 $2,046.24

      Total:                                      $13,186.88

      Plaintiff's wages actually paid:            ($2,760.00)

      Total Damages Owed:                         **$10,426.88**

    4.  <u>Eric Dupree</u>

    36.  Dupree worked an average of 46 hours per week for approximately three weeks on the Queens College project (Dupree Decl. ¶ 1). Dupree alleges that he was paid $2,070 during this time period ($15.00 x 46 hours x 3 weeks = $2,070). Thus, based on the principles described above, Dupree is entitled to **$7,820.16** in total damages, calculated as follows:

<u>Straight-time Wages</u>
3 weeks of work x 40 hours per week x $56.84 =      $6,820.80

<u>Overtime Wages</u>
3 weeks of work x 6 OT hours per week x $85.26 =    $1,534.68

<u>Liquidated Damages</u>
100% of $1,534.68 =                                 $1,534.68

      Total:                                      $9,890.16

      Plaintiff's wages actually paid:            ($2,070.00)

      Total Damages Owed:                         **$7,820.16**

### 5.  Shasheem Jones

37.  Jones worked an average of 45 hours per week for approximately two weeks on the Queens College project (Jones Decl. ¶¶ 1, 8).  Jones alleges that he was paid $1,350 during this time period ($15.00 x 45 hours x 2 weeks = $1,350).  Thus, based on the principles described above, Jones is entitled to **$4,902.40** in total damages, calculated as follows:

Straight-time Wages
2 weeks of work x 40 hours per week x $56.84 =          $4,547.20

Overtime Wages
2 weeks of work x 5 OT hours per week x $85.26 =          $852.60

Liquidated Damages
100% of $852.60 =                                        $852.60

     Total:                                        $6,252.40

     Plaintiff's wages actually paid:              ($1,350.00)

     Total Damages Owed:                           **$4,902.40**

### F.  Attorneys' Fees and Costs

38.  Finally, plaintiffs seek an award of $72,855 in attorneys' fees and $2,324.90 in out-of-pocket costs incurred in bringing this action.  "'Both the FLSA and the NYLL are fee-shifting statutes that entitle plaintiffs to recover reasonable attorneys' fees and costs in successfully prosecuting wage-and-hour actions.'"  Greathouse v. JHS Security, Inc., 11 Civ. 7845 (PAE)(GWG), 2017 WL 4174811 at *2 (S.D.N.Y. Sept. 20, 2017)

(Engelmayer, D.J.), aff'd, 735 F. App'x 25 (2d Cir. 2018) (summary order), quoting Hernandez v. JRPAC Inc., 14 Civ. 4176 (PAE), 2017 WL 66325 at *1 (S.D.N.Y. Jan. 6, 2017) (Engelmayer, D.J.); see also 29 U.S.C. § 216(b); N.Y. Lab. Law § 198 (1-a).

39. It is well settled in this Circuit that courts utilize the "lodestar" method, i.e., "the product of a reasonable hourly rate and the reasonable number of hours required by the case," to determine a presumptively reasonable attorneys' fee award. Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011); see also Sajvin v. Singh Farm Corp., 17-CV-4032, 2018 WL 4214335 at *8-*9 (E.D.N.Y. Aug. 13, 2018) (Report & Recommendation), adopted at, 2018 WL 4211300 (E.D.N.Y. Sept. 4, 2018); Reyes v. Lincoln Deli Grocery Corp., 17 Civ. 2732 (KBF), 2018 WL 2722455 at *8 (S.D.N.Y. June 5, 2018) (Forrest, D.J.). Under this method, courts look to "the market rate 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" Greathouse v. JHS Security, Inc., supra, 2017 WL 4174811 at *2, quoting Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984).

40. Plaintiffs were represented during this action by William C. Rand, Esq. Although Mr. Rand's requested hourly rate of $450 is on the higher end of rates normally deemed reasonable for FLSA and NYLL wage-and-hour cases in this Circuit, Mr. Rand has practiced law for over 26 years, is a founding partner of his

firm and has extensive experience in labor and employment matters (Law Firm Biography, annexed to Rand Decl. as Ex. G (D.I. 66-7)). Thus, I find $450 to be a reasonable hourly fee given Mr. Rand's qualifications and experience. See Siegel v. Bloomberg L.P., 13 Civ. 1352 (DF), 2016 WL 1211849 at *5-*6 (S.D.N.Y. Mar. 22, 2016) (Freeman, M.J.) (awarding a $505 hourly fee to an attorney with 22 years of experience); Andrews v. City of New York, 118 F. Supp. 3d 630, 639 (S.D.N.Y. 2015) (Stein, D.J) (awarding a $450 hourly fee to an attorney with 30 years of experience); Lizondro-Garcia v. Kefi LLC, 12 Civ. 1906 (HBP), 2015 WL 4006896 at *5 (S.D.N.Y. July 1, 2015) (Pitman, M.J.) (awarding a $450 hourly fee to an attorney with 15 years of experience); Gonzalez v. Scalinatella, Inc., 112 F. Supp. 3d 5, 26-27 (S.D.N.Y. 2015) (Dolinger, M.J.) (awarding a $450 hourly fee to an attorney with 20 years of experience).

41.    Mr. Rand has also submitted the required contempo-raneous time records with his fee application (Time Records of William C. Rand, Esq., annexed to Rand Decl. as Ex. G (D.I. 66-7) ("Rand Records")). Scott v. City of New York, 626 F.3d 130, 133 (2d Cir. 2010) (all applications for attorneys' fees must be supported by contemporaneous time records). According to these time records, Mr. Rand spent 161.9 hours litigating this action (Rand Records). Although this is a default action, the AJS Defendants did not default until January 2, 2018 -- over two and

one-half years after the case was initially filed. During those two years, the parties engaged in extensive discovery and motion practice, conducted seven depositions and attended several settlement and court conferences.

42. However, upon a close review of these time records, I find some of the documented hours to be "excessive" and "redundant." Hensley v. Eckerhart, 461 U.S. 424, 434 (1983) (excessive or redundant hours should be excluded from attorney fee awards); accord Cabrera v. Schafer, CV 12-6323 (ADS)(AKT), 2017 WL 9512409 at *3 (E.D.N.Y. Feb. 17, 2017) (Report & Recommendation), adopted at, 2017 WL 1162183 (E.D.N.Y. Mar. 27, 2017); Andrews v. City of New York, supra, 118 F. Supp. 3d at 639 ("The court is obligated to exclude hours that are excessive, redundant, or otherwise unnecessary." (internal quotation marks and citations omitted)). For example, Mr. Rand has several entries for "researching," "drafting" and then "finalizing" the complaint, and claims over seven hours to draft a fairly straightforward complaint (Rand Records). Mr. Rand also states that he spent 6.3 hours drafting plaintiffs' declarations which were essentially identical to one another (Rand Records).

43. When a court finds some attorney hours to be excessive or redundant, it "is not required to set forth item-by-item findings [of those] individual billing items. Rather, . . . a court may use a percentage reduction as a practical means of

trimming fat from a fee application." Reiter v. Metro. Transp. Auth., 01 Civ. 2762 (GWG), 2007 WL 2775144 at *13 (S.D.N.Y. Sept. 25, 2007) (Gorenstein, M.J.); see also Reiseck v. Universal Communications of Miami, Inc., 06 Civ. 0777 (LGS)(JCF), 2014 WL 5374684 at *8 (S.D.N.Y. Sept. 2014) (Francis, M.J.) (Report & Recommendation), adopted at, 2014 WL 5364081 (S.D.N.Y. Oct. 22, 2014) (Schofield, D.J.) (applying a 10% deduction to the re-quested attorneys' fees, rather than an item-by-item analysis). Because I find some of Mr. Rand's requested hours to be excessive and redundant, I shall apply a 5% deduction to the requested fees. Thus, I award $69,212.25 to plaintiffs as attorneys' fees, as opposed to the requested $72,855.[9]

---

[9]It is worth noting that even this reduced amount of $69,212.25 is still $22,449.05 more than the damages being awarded to all five plaintiffs combined. The caselaw is clear, however, that a plaintiff's "limited monetary recovery does not preclude a substantial attorneys' fee award, for there is no requirement of proportionality." Baird v. Boies, Schiller & Flexner LLP, 219 F. Supp. 2d 510, 519-20 (S.D.N.Y. 2002) (Chin, D.J.); accord Cabrera v. Schafer, supra, 2017 WL 9512409 at *4 ("although the fee must be reasonable, it need not be proportional"); Allende v. Unitech Design, Inc., 783 F. Supp. 2d 509, 511 (S.D.N.Y. 2011) (Peck, M.J.) ("While the requested attorneys' fees exceed plaintiffs' own recovery in the case, that is of no matter. In FLSA cases . . . the attorneys' fees need not be proportional to the damages plaintiffs recover, because the award of attorneys' fees in such cases encourages the vindication of Congressionally identified policies and rights.").

The fact that a large portion of plaintiffs' damages come from a common law breach of contract claim, rather than the FLSA or the NYLL, also does not create an obstacle for the recovery of attorneys' fees because it is clear that the successful breach of contract claim was "inextricably
(continued...)

44. Turning to plaintiffs' request for the reimbursement of out-of-pocket costs, plaintiffs request $400 in filing fees, $215 in service of process fees, $44.20 in copying fees and $1,665.70 in deposition fees. Plaintiffs' request for $659.20 in filing fees, service of process and copying fees is reasonable, and I approve it. See Nat'l Integrated Grp. Pension Plan v. Dunhill Food Equip. Corp., 11 Civ. 3652 (MKB), 2014 WL 887222 at *10 (E.D.N.Y. Jan. 6, 2014) (Report & Recommendation), adopted at, 2014 WL 883893 (E.D.N.Y. Mar. 6, 2014) ("Filing fees and service of process are specifically included in the statute, and therefore plaintiffs here may recover them."), citing 28 U.S.C. § 1920. I also find that plaintiffs' request for $1,665.70 in court reporter fees for two depositions is also reasonable because "these disbursements [were] adequately documented" through the invoices plaintiffs submitted. Hernandez v. JRPAC Inc., supra, 2017 WL 66325 at *2 (court reporter fees for depositions are the type of out-of-pocket cost "commonly reimbursed by courts in this District"); accord Kalloo v. Unlimited Mechanical Co. of New York, 977 F. Supp. 2d 209, 214 (E.D.N.Y.

---

⁹(...continued)
intertwined" and involved a "common core of facts" with the FLSA and the NYLL overtime claim and did not require additional work. Dominic v. Consolidated Edison Co. of New York, Inc., 822 F.2d 1249, 1259-60 (2d Cir. 1987) (full attorneys' fees justified where plaintiff's unsuccessful age discrimination claim was intertwined with his successful retaliatory claim); accord Cabrera v. Schafer, supra, 2017 WL 9512409 at *8-*9; Houston v. Cotter, 234 F. Supp. 3d 392, 398-99 (E.D.N.Y. 2017).

2013); <u>Jemine v. Dennis</u>, 901 F. Supp. 2d 365, 394 (E.D.N.Y. 2012).

45.    Thus, I award $69,212.25 to plaintiffs' counsel as attorneys' fees and $2,324.90 in out-of-pocket costs.

IV.    Conclusion

Accordingly, for all the foregoing reasons, plaintiffs are awarded judgment against the AJS Defendants, jointly and severally, as follows: (1) $10,426.88 to Douglas; (2) $13,186.88 to Smith; (3) $10,426.88 to Bautista; (4) $7,820.16 to Dupree; (5) $4,902.40 to Jones and (6) $71,537.15 in attorneys' fees and costs.    Thus, in total, plaintiffs are entitled to a judgment of **$118,300.35.**  Plaintiffs' counsel is directed to submit a proposed judgment.

Dated:    New York, New York
          September 20, 2018

SO ORDERED

HENRY PITMAN
United States Magistrate Judge

Copies transmitted to:

Counsel of Record

Copies mailed to:

A.J.S. Project Management, Inc.
AJS Construction & Renovation Inc.
PMB #231
4809 Avenue N
Brooklyn, New York   11234

A.J.S. Project Management, Inc.
AJS Construction & Renovation Inc.
4th Floor
377 Fifth Avenue
New York, New York   10016